IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSAN PACINI and GARY FERNANDES,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>NATIONSTAR MORTGAGE, LLC,<br><br>　　　　Defendant.<br>　　　　　　　　　　　　　　　　　　／ | No. C 12-04606 SI<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITHOUT LEAVE TO AMEND** |

　　　Now before the Court is defendant Nationstar Mortgage, LLC's motion to dismiss plaintiffs' first amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiffs have filed an opposition to the motion to dismiss, but defendant has not filed a reply. In addition, both parties have submitted supplemental briefing pursuant to the Court's January 16, 2013 Order. *See* Dkt. 27. Pursuant to Civil Local Rule 7-1(b), the Court determines that the matter is appropriate for resolution without oral argument. Having reviewed the parties' arguments, the Court hereby GRANTS defendant's motion to dismiss without leave to amend, for the reasons set forth below.

**BACKGROUND**

　　　Plaintiffs Susan Pacini and Gary Fernandes are the owners of two properties, one in Martinez, California, and the other in Byron, California. First Amended Complaint ("FAC") ¶¶ 5, 11. The two properties are security for mortgage notes now serviced or held by defendant Nationstar Mortgage, LLC ("Nationstar"). *Id.* The complaint alleges that, at some point in the middle of 2010, plaintiffs, despite being "ready, willing, and able to continue making their monthly mortgage payments," contacted their loan servicer to inquire about a modification of their mortgage loan. *Id.* ¶¶ 12, 16.

The core allegation underlying plaintiffs' six causes of action is that when plaintiffs sought to modify their loans, Nationstar repeatedly told plaintiffs that only borrowers in default on their payment obligations could apply for loan modifications. *Id.* ¶¶ 13, 14,60.[1] First, in mid-2010, "Defendant's representative[s] . . . told Plaintiff FERNANDES that Plaintiff could not apply for a loan modification . . . unless Plaintiffs ceased making [mortgage] payments on the Donna Property." *Id.* ¶ 13; *see also id.* ¶ 14 (same language but substituting the Schooner property and plaintiff Pacini). In response to plaintiffs' inquiries, defendant's representatives "repeatedly assured plaintiffs that there would be no negative impact from missing payments, that their credit would not be negatively affected, and their home would not face foreclosure as long as they were applying for a loan modification." *Id.* ¶ 15. Plaintiffs ceased making payments, applied for, and were approved for loan modifications on both properties in December 2010. *Id.* ¶ 16.

Around October 2011, plaintiffs again sought loan modifications, and were again "told that, in order to apply for loan modifications, they would need to stop making their mortgage payments." *Id.* ¶¶ 18–19. Plaintiffs allege that they stopped making payments accordingly. *Id.* ¶ 20. Prior to submitting their second application, however, "Defendant's representative told Plaintiffs that applying for loan modifications was a futile effort" because their credit score was too low. *Id.* ¶ 21. Plaintiffs allege that Nationstar "specifically instructed" plaintiffs to not pay their mortgage in order to "engineer a default." *Id.* ¶ 35, 50. Moreover, plaintiffs would not have stopped making payments "had they known that they would not qualify for loan modifications." *Id.* ¶ 22. Plaintiffs allege that defendant knew that they would not qualify for a modification prior to inducing them to stop making payments. *Id.* And although defendant allegedly represented to plaintiffs that their credit would not be impacted by their first default and modification, *id.* ¶ 15, defendant reported their 2010 default to the credit bureaus, *id.* ¶ 24. As a result, plaintiffs' "credit is destroyed, and they now risk the imminent loss of their properties." *Id.* ¶ 25.

On October 22, 2012, plaintiffs filed their FAC against defendant Nationstar, "as successor in interest to Aurora," and Does 1 through 100. *Id.* ¶¶ 5, 6. Plaintiffs' FAC asserts six causes of action

---

[1] Although plaintiffs concede that Aurora Loan Services, LLC, serviced the loan and engaged in the conduct at issue, plaintiffs' FAC repeatedly ascribes all conduct to Nationstar. *Id.* ¶ 12.

2

under California law: breach of the implied covenant of good faith and fair dealing; violation of California Civil Code § 2924 *et seq.*; reformation of contract; invasion of privacy – false light; negligent misrepresentation; and unfair competition in violation of California Business and Professions Code § 17200 *et seq. Id.* ¶¶ 31–70. Defendant Nationstar has moved to dismiss arguing that plaintiff has not properly pled that Nationstar could be held liable for Aurora's actions as a successor-in-interest. Pursuant to the Court's order, both parties submitted supplemental briefing on the issues of whether California law requires a successor-in-interest to assume legal liabilities of the predecessor, what allegations would suffice to adequately plead successor liability, and whether the Court may take judicial notice of documents supplied by defendant in support of its motion.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although courts do not require "heightened fact pleading of specifics," *Twombly*, 550 U.S. at 544, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," *id.* at 555. The plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Id.*

In deciding whether the plaintiff has stated a claim, the Court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in his or her favor. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *St. Clare v. Gilead Scis., Inc. (In re Gilead Scis. Sec. Litig.)*, 536 F.3d 1049, 1055 (9th Cir. 2008). Moreover, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

If the Court dismisses a complaint, it must decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

**DISCUSSION**

**1.    Successor Liability.**

Although the plaintiffs concede that Aurora, not Nationstar, allegedly induced them to default on their loans, plaintiffs allege that Nationstar is liable nonetheless as the successor-in-interest to Aurora. FAC ¶ 5. Nationstar contends that plaintiffs' entire FAC should be dismissed because plaintiffs have not alleged facts showing that Nationstar assumed Aurora's liabilities under one of the four accepted grounds for imposing successor liability. The Court agrees.

Under California law, a corporation does not assume the liabilities of another corporation when purchasing the latter's assets unless:

> (1) there is an express or implied agreement of assumption, (2) the transaction amounts to a consolidation or merger of the two corporations, (3) the purchasing corporation is a mere continuation of the seller, or (4) the transfer of assets to the purchaser is for the fraudulent purpose of escaping liability for the seller's debts.

*Ray v. Alad*, 19 Cal. 3d 22, 28 (1977). Plaintiffs do not dispute that Nationstar is not liable under the second, third, or fourth exceptions. Plaintiffs only argue that Nationstar is liable under the first exception, because it either expressly assumed the liabilities of Aurora through the Deeds of Trust ("DOT") for the two properties or impliedly assumed them by accepting Aurora's "beneficial interest." Pl. Sur. at 3-5 (Dkt. 29). In the alternative, plaintiffs ask the Court to equitably extend liability to Nationstar. *Id.* at 5.

**A.    Express Assumption of Liability**

Plaintiffs argue that Nationstar expressly assumed Aurora's liabilities when it was assigned Aurora's beneficial interest under the DOT. Nationstar responds that plaintiffs have not alleged a

4

factual basis for an express assumption of liability, but simply stated their legal conclusion that Nationstar assumed Aurora's liabilities along with its assets. The Court agrees.

First, plaintiffs quote from the Adjustable Rate Note ("ARN"), which states, "[a]ny person [] who takes over these obligations, including the obligations of a guarantor, surety, or endorser of the Note, is also obligated to keep all promises made . . . ." *Id.* at 4.[2] However, when read in its full context, the plain language of this provision clearly applies only to the borrower, not the note holder:

> **9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**
> If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

*Id.* (emphasis original). Titled "OBLIGATIONS OF **PERSONS** UNDER THIS NOTE," the paragraph begins by stating a threshold limitation, that it applies to "each person" who signs the note. *Id.* (emphasis added). Such persons are "fully and personally obligated to keep all promises made" including "the promise to pay the full amount owed." *Id.* The "persons" covered include the borrowers and "a guarantor, surety, or endorser," who are all "obligated" to "do these things," i.e., keep the promise to pay. Thus, the "person" and "obligations" in the next sentence from which plaintiffs quote, "[a]ny person who takes over these obligations...," refer back to the persons, i.e., borrower, guarantor, surety, or other assignee, and their obligation to keep all promises made, including the promise to pay. *Id.* This paragraph does not obligate current or future note holders to "keep all promises made," such as the promise to pay, since that obligation belongs only to the borrower. This paragraph provides the

---

[2] Defendant has requested that the Court take judicial notice of numerous documents detailing the mortgage transaction. In considering a motion to dismiss, the Court may take judicial notice of matters of public record outside the pleadings. *See MGIC Indemn. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986). As nearly all of the documents are in the public record, the Court will take judicial notice of them.
 The ARNs are not in the public record. However, the Court may still consider them because they are incorporated by reference in the complaint. The Ninth Circuit has said that "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss." *Branch v. Tunnel*, 14 F.3d 449, 453–54 (9th Cir. 1994), overruled on other grounds by *Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

5

note holder the right to enforce the obligation to pay against "all of us," i.e., each person who signed the note. Read as plaintiffs suggest, this paragraph would be illogical because it would mean that the note holder was obligating itself or future note holders to the keep the promise to pay. This paragraph provides only that the borrowers and any guarantor, surety, or endorser may be equally liable for the borrower's responsibilities under the note and that such liability transfers if any of these persons transfers their interest in the note.

Next, plaintiffs point to the DOTs for the properties, which state that a change in the holder of the note "might result in a change in the entity (known as the 'Loan Servicer') that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law." RJN, Ex. C ¶ 20, Ex. O ¶ 20. From this statement, plaintiffs conclude that "the lender's contractual obligations were assigned by Aurora Bank FSB to Nationstar." Pl. Sur. at 4. Plaintiffs, however, cite no provision by which Aurora's liabilities were expressly transferred along with the trusteeship. *See Alad*, 19 Cal. 3d at 28 (stating general rule against transferring liabilities along with sale of principal assets). Simply because the contract contemplates that changes in the loan servicer may occur does not imply that a transfer of liability also automatically occurs.

Lacking any specific factual allegations, the Court finds that plaintiffs have not sufficiently pled an express assumption of liability.

### B.     Implied Assumption of Liability

Plaintiffs next argue that defendant impliedly assumed Aurora's liabilities by accepting the benefits of the contract. Whether an implied assumption of liability occurred depends on the intent of the parties, and an assumption may be implied when a party accepts the rights and privileges of a contract. *See* Witkin, Summary of California Law 10th ed., Contracts, § 740 (2005) (citing *Weidner v. Zieglar*, 23 P.2d 515 (Cal. 1933)). Furthermore, under California law, the "voluntary acceptance of the benefit of a transaction is equivalent to a consent to all obligations arising from it, so far as the facts are known, or ought to be known, to the person accepting." Cal. Civ. Code § 1589.

6

1    Plaintiffs have alleged no facts to support an implied assumption of liability theory. To do so,
2 plaintiffs must allege that liabilities were not limited in the transfer of assets, and that the intent of the
3 parties was that they should be transferred. *See Schwartz v. Pillsbury Inc.*, 969 F.2d 840, 845–846 (9th
4 Cir. 1992). Here, plaintiffs have only provided the conclusory allegation that "Defendant
5 NATIONSTAR acquired all of Aurora Loan Services, LLC's assets and liabilities . . . ." *See* FAC ¶ 5,
6 11. Plaintiffs have not directed the Court to any provisions in the DOT or other documents that address
7 the parties' intent or the transfer of liabilities. Accordingly, the Court finds that plaintiffs have not
8 sufficiently pled facts to show that Nationstar impliedly assumed Aurora's liabilities to plaintiffs.

### C. Equitable Imposition of Successor Liability

In the alternative, plaintiffs ask the Court to equitably impose successor liability on Nationstar beyond the exceptions articulated in *Alad*. However, plaintiffs have not persuaded the Court that there is a basis in law for doing so.

Plaintiffs offer the following language from *Malone v. Red Top Cab Co.,* 16 Cal.App.2d 268 (1936), a case that precedes *Alad* by over forty years, as support for equitably imposing liability beyond the traditional exceptions:

> It would be manifestly unfair, unjust, and contrary to equity that [a corporation assuming assets of another corporation] should thus acquire all of the assets of the other corporation . . . and not itself become responsible for such debts and other liabilities. If it takes the benefit, it must, as has so often been said, take the burden, which equitably attaches, with it.

*Malone*, 16 Cal.App.2d at 273 (quoting *McAllister v. American Ry. Express Co.*, 103 S.E. 129 (N.C. 1920)). Plaintiffs' reliance is misplaced. Courts interpreting *Red Top Cab* understand it not as support for a new equitable exception, but instead as an early articulation of the policy rationale for treating a corporation as a mere continuation of its predecessor where the sale or transfer was not supported by consideration. *See Franklin v. USX Corp.*, 87 Cal. App. 4th 615, 626 (2001) (*Red Top Cab* applies to the mere continuation exception articulated in *Alad*).

The mere continuation exception to the general rule of successor non-liability applies "only upon a showing of one or both of the following factual elements: (1) no adequate consideration was given for the predecessor corporation's assets and made available for meeting the claims of its unsecured

7

creditors; (2) one or more persons were officers, directors, or stockholders of both corporations." *Alad*, 19 Cal.3d at 29 (citations omitted). Plaintiffs have made no factual allegations that would satisfy either element.

Finding insufficient factual allegations to support any of the exceptions to successor non-liability under California law, the Court DISMISSES plaintiffs' FAC.

**2.    Leave to Amend**

Having dismissed the complaint, the Court must now consider whether to grant leave to amend. The "district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted). Although plaintiffs may be able to discover and allege additional facts regarding the exact nature of the transfer of liability from Aurora to Nationstar, the FAC fails to state a claim with respect to any of the underlying causes of action. All six of plaintiffs' causes of action rise and fall on a theory that courts have repeatedly considered and rejected in different contexts – that a loan servicer purposely induced a borrower to default by falsely promising loan modification opportunities. *See, e.g.*, *Casault v. Federal Nat. Mortg. Ass'n*, 2012 WL 6861701, *5 (N.D. Cal. Nov. 26, 2012) (dismissing fraud claim because plaintiffs could not allege reasonable reliance based only on servicer's discretionary offer to allow plaintiffs to apply for loan modification); *Lawrence v. Aurora Loan Services LLC*, 2010 WL 364276, *7 (E.D. Cal. Jan. 25, 2010) ("Plaintiffs are unable to cloak themselves with equity when they attempted to usurp their original loan" by purposely defaulting in order to seek loan modification.). Here, too, the Court rejects this theory as it relates to each cause of action plaintiffs assert.

**A.    Implied Covenant of Good Faith and Fair Dealing**

Plaintiffs contend that Nationstar "interfered with Plaintiffs' ability to perform under the contracts by telling Plaintiffs that, in order to receive loan modifications, they would need to stop

making payments." FAC ¶ 37. This falls far short stating a claim for breach of the implied covenant of good faith and fair dealing.

"There is an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement." *Kransco v. American Empire Surplus Lines Ins. Co.*, 23 Cal.4th 390, 400 (2000) (quoting *Comunale v. Traders & General Ins. Co.*, 50 Cal. 2d 654, 658 (1958)). The implied covenant is "a supplement to an existing contract." *McClain v. Octagon Plaza, LLC*, 159 Cal. App. 4th 784, 799 (2008). To state a claim, plaintiff must identify the specific contractual provision that was frustrated. *Plastino v. Wells Fargo Bank*, 873 F. Supp. 2d 1179, 1191-92 (N.D. Cal. 2012). As such, "it is universally recognized [that] the scope of a conduct prohibited by the covenant of good faith is circumscribed by the purposes and express terms of the contract." *Carma Developers, Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal.4th 342, 373 (1992).

Plaintiffs' claim fails for two reasons. First, admittedly, defendant did not injure plaintiffs' ability to perform under the contract. Plaintiffs were parties to loan agreements which required monthly payments. *See* RJN, Ex. B, N. After successfully obtaining loan modifications upon their first default, plaintiffs decided to "inquire about a new modification" and decided to go into default a second time although they were "ready, willing, and able" to make monthly payments. FAC ¶¶ 18, 20. To the extent plaintiffs' credit score was damaged by the first default, that injury does not impact plaintiffs' ability to make monthly payments. Moreover, even if Nationstar, or Aurora, represented that only accounts in default would be eligible to apply for modifications, in no way did that *require* plaintiffs to go into a second default, nor is there any allegation that defendant *guaranteed* plaintiffs automatic loan modifications each time they decide to go into default. Plaintiffs' decision to seek better financing terms through a second modification, despite their ability to pay under the current terms, was theirs alone.

Second, to imply the term here would be inconsistent with the purpose and express terms of the contract. There would be little point to a loan agreement which requires fixed monthly payments over a defined period of time if enterprising borrowers could guarantee new, better terms by going into default. Instead, the relevant agreements clearly spell out the consequences of failing to make monthly

9

1 payments – default and foreclosure. *See* RJN, Ex. B, N. And plaintiffs' attempt to imply a revolving
2 door modification term into the contract would plainly contradict its terms and purposes.

3 In short, leave to amend would be futile because plaintiffs' ability to perform was not injured
4 by defendant's conduct, and because the term plaintiffs seek to imply would completely undermine the
5 contract. Accordingly, plaintiffs' breach of the implied covenant of good faith and fair dealing claim
6 is DISMISSED without leave to amend.

### B. Violation of California Civil Code § 2924

9 Plaintiffs allege that defendant's conduct violates California Civil Code § 2924, which requires
10 that a mortgagor be in breach of the obligation securing the mortgage before the mortgagee can invoke
11 its power of sale. FAC ¶¶ 42-44. Although plaintiffs admit that they defaulted on their payment
12 obligations, plaintiffs cite to Cal. Civ. Code § 1511 in arguing that their duty to make timely payments
13 was excused when defendant "induced Plaintiffs not to make payments." *Id*. ¶ 44.

14 The Court again rejects plaintiffs' proposed line of reasoning – that once a bank offers a single
15 modification to a borrower in default it is forever bound to continually offer modifications to that
16 borrower each time that borrower chooses to go into default. Plaintiffs cite no legal support for the
17 proposition that an oral promise under Cal. Civ. Code § 1511, which excuses performance when a
18 creditor induces a debtor not to perform, can extinguish rights guaranteed by a signed and recorded legal
19 obligation. The statute of frauds plainly precludes an oral waiver in the case of deeds of trusts and any
20 modification to a deed of trust or promissory note must be in writing. *See Secrest v. Sec. Nat'l*
21 *Mortgage Loan Trust 2002-2*, 167 Cal. App. 4th 544, 555 (2008).

22 Moreover, plaintiffs' theory would plainly contradict the terms of the relevant contracts.
23 Plaintiffs' DOTs state, "[a]ny forbearance by Lender in exercising any right or remedy . . . shall not be
24 a waiver of or preclude the exercise of any right or remedy." RJN, Ex. C ¶ 12, O ¶ 12. Morever,
25 plaintiffs' ARNs state, "[e]ven if, at a time when [borrower] is in default, the Note Holder does not
26 require [borrower] to pay immediately as described above, the Note Holder will still have the right to
27 do so if [borrower is] in default at a later time." RJN, Ex. B ¶ 7(D), N ¶ 7(D). Thus, although defendant
28 temporarily excused non-payment and offered plaintiffs a modification once, defendant is not forever

10

1 bound to do so each time plaintiffs willingly default. Instead, defendant may enforce its right to
2 foreclose, as it has done here, when plaintiffs chose to go into a second default, even after being given
3 a clean slate after their first default.

4 Plaintiffs' duty to make monthly payments was not extinguished by defendant's alleged promises
5 that modifications could only be sought upon default. As discussed above, the decision to default was
6 plaintiffs' alone. Accordingly, plaintiffs' allegations fail to state a claim and the Court DISMISSES
7 plaintiffs' cause of action for violation of California Civil Code § 2924, without leave to amend.

### C. Reformation of Contract

In plaintiffs' third cause of action, for reformation of contract, they allege that Section 12 of the DOT should be stricken from the instrument because it encourages defendant to engage in unconscionable behavior. Section 12, titled "Forbearance by Lender Not a Waiver," provides that an "[e]xtension of time for payment . . . of sums secured by this Security Instrument granted by Lender to Borrower . . .shall not operate to release liability of Borrower." RJN, Ex. C ¶ 12, O ¶ 12. Plaintiffs allege that defendant used this provision to "engineer" a default by representing to borrowers "that if they stopped making loan payments, Defendant would not charge [borrowers] with late fees or attorneys fees." FAC ¶ 50. Relying on that promise, plaintiffs stopped making their monthly payments, but were still assessed late fees and attorneys fees. Thus, plaintiffs conclude that enforcement of Section 12, which allows defendant to charge such fees and institute foreclosure proceedings regardless of any past forbearance, would contradict the terms of defendant's alleged modification policy.

California Civil Code § 3399 provides that "[w]hen, through fraud or a mutual mistake of the parties, or a mistake of one part, which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised" to express the true intention of the parties, so long as the revision does not prejudice rights acquired by third parties in good faith and for value. Cal. Civ. Code § 3399. Courts do not have the power to create a new contract, however, where there is no evidence that the parties reached a mutual understanding on the essential terms. *Hess v. Ford Motor Co.*, 27 Cal.4th 516, 524 (2002).

11

Here, again, plaintiffs' attempt to place responsibility on defendant for their failed strategic loan default fails to state a claim. There is no basis to conclude that defendant was mistaken about the contract term plaintiffs seek to strike. Defendant allegedly represented that those borrowers in loan modification proceedings would not be charged fees. But the DOT and ARN make clear that they did not guarantee that borrowers could repeatedly qualify for loan modifications in order to take advantage of the waived fees. Instead, defendant relies on Section 12 of the DOT precisely because it prevents borrowers from attempting serial modification schemes. Section 12 provides the lender the option of allowing a borrower a limited opportunity to miss payments or avoid fees without having that offer extend in perpetuity. Here, plaintiffs are displeased that they were not allowed to miss payments and cancel fees a second time, after successfully deciding to skip payments in order to obtain forbearance a year prior. While plaintiffs may have understood defendant's policy – only borrowers in default could qualify for loan modification – as an invitation to default, there is no basis to conclude that this mistake was mutual or that defendant knew of plaintiffs' mistaken understanding. Instead, as discussed above, the plain terms of the DOT and the ARN suggest otherwise – that any temporary forbearance or modification does not extinguish the lender's rights to later enforce the terms of the DOT and ARN.

In the face of the plain language of these contracts, plaintiffs cannot cure their deficient claim. Accordingly, the Court DISMISSES plaintiffs' reformation of contract cause of action without leave to amend.

### D. False Light

Plaintiffs' allegations regarding their fourth cause of action for invasion of privacy – false light also cannot state a claim. Plaintiffs allege that defendant reported the false fact that plaintiffs had defaulted on their mortgages to the credit bureaus. Plaintiffs have also requested that the Court permit them to amend their complaint in order to re-allege this cause of action against Aurora instead of Nationstar. *See* Dkt. 29 at 2.

Under California law, to state a claim for the tort of false light invasion of privacy plaintiff must plead that (1) the defendant caused to be generated publicity of the plaintiff that was false or misleading, and (2) the publicity was offensive to a reasonable person. *Fellows v. Nat'l Enquirer, Inc.*, 42 Cal.3d

12

234, 238-39 (1986). Even if they place the person in a less than flattering light, the published facts are not actionable if they are true or accurate. *Id.* at 238.

Whether alleged against Aurora or Nationstar, plaintiffs' claim fails because the fact at issue – their default – was true. Although plaintiffs claim that they were in default because defendant encouraged them to default in order to apply for modification, this does not render "untrue" the fact that they were in default. Plaintiffs cannot have it both ways: either they were in default and therefore eligible for modifications, or they were not in default in which case defendant published a falsity. Here, the entire theory of plaintiffs' case is that they were not permitted a second modification after willingly going into *default* a second time. Whether or not their default was encouraged by defendant, the fact is that plaintiffs were in default and publication of that fact was not false.

Moreover, plaintiffs' claim is expressly preempted by the Fair Credit Reporting Act ("FCRA"), unless plaintiff alleges that the defendant acted with malice or willful intent to injure. *Pham v. Bank of America, N.A.,* 2010 WL 3184263, *5 (N.D. Cal. 2010). The FCRA provides that "no consumer may bring any action or proceeding in the nature of defamation . . . against any person who furnishes information to a consumer reporting agency . . . except as to false information furnished with malice or willful intent to injure such consumer." 15 U.S.C. § 1681h(e). Here, plaintiffs make no factual allegations showing malice or willful intent, but only assert the conclusory allegation that defendant acted in "reckless disregard." FAC ¶ 55.

Given these deficiencies, leave to amend would be futile. Accordingly, the Court DISMISSES plaintiffs' invasion of privacy–false light cause of action without leave to amend.

### E. Negligent Misrepresentation

Plaintiffs next allege that defendant negligently misrepresented facts to them regarding their request for a loan modification. FAC ¶¶ 57-62. Plaintiffs contend that while, on the one hand, defendant told them that they could be considered for loan modifications if they were in default, on the other hand defendant knew that plaintiffs would never qualify for such a modification. Plaintiffs have also requested that the Court permit them to amend their complaint in order to re-allege this cause action against Aurora instead of Nationstar. *See* Dkt. 29 at 2.

13

Under California law, to state a claim for negligent misrepresentation, plaintiff must allege that defendant made: (1) a misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the misrepresentation, (4) ignorance of the truth and justifiable reliance on the misrepresentation by the party to whom it was directed, and (5) resulting damage. *Glenn K. Jackson Inc. v. Roe*, 273 F.3d 1192, 1201, n. 2 (9th Cir. 2001). "It is well-established in the Ninth Circuit that both claims for fraud and negligent misrepresentation must meet Rule 9(b)'s particularity requirements." *Neilson v. Union Bank of California, N.A.*, 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003). "A pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer to the allegations. While statements of the time, place and nature of the alleged fraudulent activities are sufficient, mere conclusory allegations of fraud are insufficient." *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir.1989).

Plaintiffs' claim fails, as a threshold matter, because it does not satisfy the heightened pleading standard under Rule 9(b), whether against Nationstar or Aurora. Plaintiffs' allegation that "Defendant knew that Plaintiffs would never qualify for modifications" but still told plaintiffs that they would be considered for such modifications is conclusory and vague, at best. Plaintiffs allege that they contacted defendant "around October 2011" to inquire about a second modification, wherein they were again told that only borrowers in default are modification-eligible. FAC ¶ 18-19. At that point, plaintiffs allege that they ceased making payments in order to go into default. *Id.* ¶ 20. However, sometime after ceasing payments and before plaintiffs were able to submit a second modification application, plaintiffs allege that they "learned from Defendant that they would not qualify for loan modifications because their credit score was too low." *Id.* ¶ 21. Thus, plaintiffs did not actually apply a second time because "Defendant's representative told Plaintiffs that applying for loan modifications was a futile effort." *Id.* Plaintiffs allege, but do not specify any details, that defendant knew, prior to informing plaintiff of the modification policy in October 2011, that plaintiffs would not qualify. *See id.* ¶ 23 ("Plaintiffs are informed and believe . . . that, on or around October 2011, Defendant knew that Plaintiffs would not qualify for loan modification based on their credit score, however, Defendant induced Plaintiffs to stop making payments anyway.").

14

Plaintiffs' allegations are insufficient and internally inconsistent. Plaintiffs are imprecise as to what caused their poor credit – the first default, the second, or something else. If it was the second default, defendant could not have known about plaintiffs' poor credit in October 2011, which resulted at least in part from plaintiffs' missed payments *after* speaking to defendant's representative in October 2011. To the extent plaintiffs' poor credit was the result of the missed payments that triggered the first default in 2010, here too the allegation is insufficient and inconsistent. Plaintiffs allege that they were "repeatedly assured that there would be no negative impact for missing payments, that their credit would not be negatively affected, and their home would not face foreclosure *as long as they were applying for a loan modification*." FAC ¶ 15. Yet when plaintiffs sought a second modification, they contend that defendant told them that their earlier non-payment had in fact been reported to the credit bureaus. *Id.* ¶ 24. To "apply" for a modification, plaintiffs acknowledge that they would have to be in default, which the ARN defines as having missed at least one monthly payment. *See* RJN, Ex. B ¶ 7, N ¶ 7. Thus, to the extent defendant allegedly promised not to report missed payments for modification applicants, defendant could only do so once plaintiff had actually *applied* for modification, after some period of missed payments triggered a default.

Here, plaintiffs allege that "in or around the middle of 2010 Plaintiffs were current on their mortgage payments for both properties," when they contacted defendant to inquire about loan modifications, FAC ¶ 12, and that they "applied for" a modification around December 2010. FAC ¶ 16. Yet the Notice of Default for the Martinez, California property is dated March 22, 2010, and reports a default as early as December, 2009. RJN Ex. D. Thus, plaintiffs presumably missed payments in the months leading up to March in order to trigger the notice of default, and from March through at least December 2010, when they formally applied for modification. Defendant cannot be expected to ignore missed payments in the months leading up to plaintiffs' application.

Moreover, leave to amend would be futile here because, based on plaintiffs' own allegations, defendant never actually misrepresented its modification policy or credit bureau reporting policy. Both times that plaintiffs willingly went into default, they were in fact, *eligible* for a modification by virtue of being in default. The second time, however, they were ineligible because of their credit score, notwithstanding the fact that they met the other modification criteria – default. And as discussed above,

15

there were no misrepresentations when defendant allegedly reported plaintiffs' missed payments in the months leading up to plaintiffs' modification application.

Given the lack of specificity and the apparent lack of an actual misrepresentation, plaintiffs cannot state a negligent misrepresentation claim. Accordingly, the Court DISMISSES plaintiffs' negligent misrepresentation claim without leave to amend.

### F. Unfair Competition

California's Unfair Competition Law ("UCL") has a broad scope that allows for "violations of other laws to be treated as unfair competition that is independently actionable" while also "sweep[ing] within its scope acts and practices not specifically proscribed by any other law." *Kasky v. Nike, Inc.*, 27 Cal.4th 939, 949 (2002). Here, plaintiffs' allegation that defendant violated the UCL is tethered to their causes of action for violation of the covenant of good faith and fair dealing, wrongful foreclosure, false light, and negligent misrepresentation. FAC ¶¶ 64-68. Because the Court finds that plaintiffs cannot state a claim for those causes of action, plaintiffs' UCL cause of action similarly fails to state a claim. Accordingly, the Court DISMISSES plaintiffs' cause of action for violation of California Business and Professions Code §§ 17200 *et seq.* without leave to amend.

### CONCLUSION

For the foregoing reasons, the Court hereby GRANTS the defendant's motion to dismiss without leave to amend.

**IT IS SO ORDERED.**

Dated: June 13, 2013

SUSAN ILLSTON
United States District Judge